JEROME *v.* UNITED STATES.

No. 325.   Argued January 7, 1943.—Decided February 1, 1943.

*Mr. John T. Sapienza* for petitioner.

*Assistant Attorney General Berge,* with whom *Solicitor General Fahy* and *Messrs. Robert S. Erdahl* and *Archibald Cox* were on the brief, for the United States.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Sec. 2 (a) of the Bank Robbery Act (48 Stat. 783, 50 Stat. 749, 12 U. S. C. § 588b) provides in part that "whoever shall enter or attempt to enter any bank,[1] or any building used in whole or in part as a bank, with intent to commit in such bank or building, or part thereof, so used, any felony or larceny, shall be fined not more than $5,000 or impris-

---

[1] The term "bank" is defined in § 1 of the Act (12 U. S. C. § 588a) to include "any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States and any insured bank as defined in subsection (c) of Section 12B, of the Federal Reserve Act, as amended."

oned not more than twenty years, or both." Petitioner was indicted under that section for entering a national bank in Vermont with intent to utter a forged promissory note and thereby to defraud the bank. He was convicted after trial before a jury and was sentenced to imprisonment for one year and a day. The utterance of a forged promissory note is a felony under the laws of Vermont (P. L. 1933, § 8485, § 8750) but not under any federal statute. The Circuit Court of Appeals affirmed the conviction by a divided vote, holding that "felony" as used in § 2 (a) includes offenses which are felonies under state law. 130 F. 2d 514. We granted the petition for a writ of certiorari because of the importance of the problem in the administration of justice and because of the diversity of views which have developed as respects the meaning of "felony" in § 2 (a). Compare with the decision below *Hudspeth* v. *Melville*, 127 F. 2d 373; *Hudspeth* v. *Tornello*, 128 F. 2d 172.

Prior to 1934, banks organized or operating under federal law were protected against embezzlement and like offenses by R. S. 5209, 40 Stat. 972, 12 U. S. C. § 592. But such crimes as robbery, burglary, and larceny [2] directed against such banks were punishable only under state law. By 1934 great concern had been expressed over interstate operations by gangsters against banks—activities with which local authorities were frequently unable to cope. H. Rep. No. 1461, 73d Cong., 2d Sess., p. 2. The Attorney General, in response to that concern, recommended legislation embracing certain new federal offenses. S. 2841, 73d Cong., 2d Sess. And see 78 Cong. Rec. 5738. Sec. 3 of that bill made it a federal crime to break into or attempt to break into such banks with intent to commit "any offense defined by this Act, or any felony under any law

---

[2] To the extent that acts constituting larceny would not also constitute a federal crime under R. S. 5209. See *United States* v. *Northway*, 120 U. S. 327, 335.

of the United States or under any law of the State, District, Territory, or possession" in which the bank was located. Sec. 2 made it an offense to take or attempt to take money or property belonging to or in the possession of such a bank without its consent or with its consent obtained "by any trick, artifice, fraud, or false or fraudulent representation." This bill was reported favorably by the Senate Judiciary Committee (S. Rep. No. 537, 73d Cong., 2d Sess.) and passed the Senate. 78 Cong. Rec. 5738. The House Judiciary Committee, however, struck out § 2, dealing with larceny, and § 3, dealing with burglary. H. Rep. No. 1461, *supra*, p. 1. And the bill was finally enacted without them. But it retained the robbery provision [3] now contained in the first clause of § 2 (a) of the Bank Robbery Act.

In 1937 the Attorney General recommended the enlargement of the Bank Robbery Act "to include larceny and burglary of the banks" protected by it. H. Rep. No. 732, 75th Cong., 1st Sess., p. 1. The fact that the 1934 statute was limited to robbery was said to have produced "some incongruous results—a "striking instance" of which was the case of a man who stole a large sum from a bank but who was not guilty of robbery because he did not display force or violence and did not put any one in fear. *Id.*, pp. 1–2. The bill as introduced (H. R. 5900, 75th Cong., 1st Sess., 81 Cong. Rec. 2731) added to § 2 (a) two new clauses—one defining larceny and the other making it a federal offense to enter or attempt to enter any bank with intent to commit therein "any larceny or other depredation." For reasons not disclosed in the legislative history,

---

[3] "Whoever, by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

the House Judiciary Committee substituted "any felony or larceny" for "any larceny or other depredation." H. Rep. No. 732, *supra*, p. 2. With that change and with an amendment to the larceny clause [4] distinguishing between grand and petit larceny (81 Cong. Rec. 5376–5377), § 2 (a) was enacted in its present form.

We disagree with the Circuit Court of Appeals. We do not think that "felony" as used in § 2 (a) incorporates state law.

At times it has been inferred from the nature of the problem with which Congress was dealing that the application of a federal statute should be dependent on state law. Examples under federal revenue acts are common. *Douglas* v. *Willcuts,* 296 U. S. 1; *Helvering* v. *Stuart,* 317 U. S. 154, and cases cited. But we must generally assume, in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent on state law. That assumption is based on the fact that the application of federal legislation is nationwide (*United States* v. *Pelzer,* 312 U. S. 399, 402) and at times on the fact that the federal program would be impaired if state law were to control. *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, 503. When it comes to federal criminal laws such as the present one, there is a consideration in addition to the desirability of uniformity in application which supports the general principle. Since there is no common law offense against the United States (*United States* v. *Hudson,*

---

[4] ". . . whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

7 Cranch 32; *United States* v. *Gradwell,* 243 U. S. 476, 485), the administration of criminal justice under our federal system has rested with the states, except as criminal offenses have been explicitly prescribed by Congress. We should be mindful of that tradition in determining the scope of federal statutes defining offenses which duplicate or build upon state law. In that connection it should be noted that the double jeopardy provision of the Fifth Amendment does not stand as a bar to federal prosecution though a state conviction based on the same acts has already been obtained. See *United States* v. *Lanza,* 260 U. S. 377; *Hebert* v. *Louisiana,* 272 U. S. 312. That consideration gives additional weight to the view that where Congress is creating offenses which duplicate or build upon state law, courts should be reluctant to expand the defined offenses beyond the clear requirements of the terms of the statute.

There is no plain indication in the legislative history of § 2 (a) that Congress used "felony" in a sense sufficiently broad to include state offenses. Though the legislative data are meager, the indications are to the contrary. In the first place, the 1934 bill expressly provided, as we have noted, that state felonies were included in the definition of the new federal offense of burglary. That provision was stricken in the House. The 1934 bill also defined larceny to include larceny by trick or fraud. That provision was likewise eliminated in the House. The 1934 Act was passed without either of them. The 1937 bill did not renew the earlier proposals to include them but substituted "any larceny or other depredation." Larceny, like robbery, is defined in § 2 (a). And "depredation" is not devoid of meaning in such a setting (cf. *Deal* v. *United States,* 274 U. S. 277, 283) apart from any special significance which it may have in local law. It is difficult to conclude in the face of this history that Congress, having rejected in 1934 an express provision making

state felonies federal offenses, reversed itself in 1937, and, through the phrase "any felony or larceny," adopted the penal provisions of forty-eight states with respect to acts committed in national or insured banks. It is likewise difficult to believe that Congress, through the same clause, adopted by indirection in 1937 much of the fraud provision which it rejected in 1934. Cf. *United States* v. *Patton,* 120 F. 2d 73.

In the second place, Congress defined in § 2 (a) robbery, burglary, and larceny but not felony. We can hardly believe that, having defined three federal offenses, it went on in the same section to import by implication a miscellaneous group of state crimes as the definition of the fourth federal offense. In this connection it should be noted that when Congress has desired to incorporate state laws in other federal penal statutes, it has done so by specific reference or adoption.[5] The omission of any such provision in this Act is a strong indication that it had no such purpose here. Cf. *United States* v. *Coppersmith,* 4 F. 198, 207. The Act extends protection to hundreds of banks located in every state. If state laws are incorporated in § 2 (a), Congress has gone far toward putting these banks on a basis somewhat equivalent to "lands reserved or acquired for the use of the United States" as described in § 272 of the Criminal Code, 18 U. S. C. § 451. In such a case all violations of penal laws of the state within which the lands are located become federal offenses. Criminal Code § 289, 18 U. S. C. § 468. Such an expansion of federal criminal jurisdiction should hardly be left to implication and conjecture.

Moreover, the difficulty of giving "felony" in § 2 (a) a state law meaning is emphasized when we turn to the law

---

[5] See e. g., Act of March 4, 1909, 35 Stat. 1137, 49 Stat. 380, 18 U. S. C. § 392; Act of May 18, 1934, 48 Stat. 782, 18 U. S. C. § 408e; Act of June 11, 1932, 47 Stat. 301, 18 U. S. C. § 662a; Act of February 22, 1935, 49 Stat. 31, 15 U. S. C. § 715b; Act of June 25, 1936, 49 Stat. 1928, 27 U. S. C. § 223.

of such a state as New Jersey. There we find crimes classified as "misdemeanors" and "high misdemeanors." Rev. Stat. (1937) § 2:103–5, § 2:103–6. See *United States* v. *Slutzky,* 79 F. 2d 504, 505. Uttering a promissory note with a forged endorsement is a "high misdemeanor." Rev. Stat. (1937) § 2:132–1b. The inference is strong that if Congress had designed § 2 (a) to include the more serious state offenses committed in or against national or insured banks or only such state offenses as affected those banks (*Hudspeth* v. *Melville, supra,* p. 376), it would have used language which would have afforded that protection in all the states.

Finally, the inclusion of state crimes in the word "felony" neither comports with the scheme of the Act nor is necessary to give the Act meaning and vitality. As we have noted, the purpose of the 1934 Act was to supplement local law enforcement in certain respects. And the 1937 amendments were designed "to include larceny and burglary of the banks protected by this statute." H. Rep. No. 732, *supra,* p. 1. But there is not the slightest indication that the interstate activities of gangsters against national and insured banks had broken down or rendered ineffective enforcement of state laws covering all sorts of felonies. On the contrary, the bill introduced in 1937 was much more selective and revealed no purpose to make a comprehensive classification of all crimes against the banks. Moreover, the run of state felonies—forgery, rape, adultery, and the like—would seem to have little or no relevancy to the need for protection of banks against the wholesale activities of the gangsters of that day. A related objection could of course be made if "felony" as used in § 2 (a) were taken to mean any federal felony so as to bring within the scope of the Bank Robbery Act miscellaneous federal felonies ranging from the sale of narcotics

to white slave traffic.[6]   But as indicated by Judge Frank in his dissenting opinion below, § 2 (a) is not deprived of vitality if it is interpreted to exclude state felonies and to include only those federal felonies which affect the banks [7] protected by the Act.   That is in our opinion the correct construction.

*Reversed.*

---

[6] It has frequently been held that when a federal statute uses a term which it does not define but which was a common law offense, it will be given its common law meaning.   *United States* v. *Palmer,* 3 Wheat. 610, 630; *United States* v. *Smith,* 5 Wheat. 153, 160; *Harrison* v. *United States,* 163 U. S. 140, 142.   In this case, however, Congress has not punished an offense by its common law name.   Moreover, at common law murder, manslaughter, arson, burglary, robbery, rape, sodomy, mayhem, and larceny were felonies.   Wharton, Criminal Law (12th ed.) § 26.   And see *Bannon* v. *United States,* 156 U. S. 464, 467.   Since those miscellaneous crimes as a group do not suggest on their face that they constitute an appropriate base on which to build a federal criminal code for protection of national and insured banks, we will not readily infer that Congress used the word "felony" in its common law meaning.   That conclusion is fortified by the further circumstance that Congress has defined numerous offenses in other federal penal statutes and has classified such offenses as felonies or misdemeanors according to the severity of the punishmeint.   Criminal Code § 335, 18 U. S. C. § 541.   Hence we need not look elsewhere for the meaning of the term.   Cf. *Reagan* v. *United States,* 157 U. S. 301, 303.   As stated in *Adams* v. *McCann,* 317 U. S. 269, nt. 2, the term "felony" is a "verbal survival which has been emptied of its historic content."   Thus we conclude that the word "felony" as used in § 2 (a) takes its meaning from federal statutes rather than from the common law.

Forgery at common law was a misdemeanor.   Wharton, *supra,* § 861.

[7] One such instance would be violation of the National Stolen Property Act, 48 Stat. 794, 53 Stat. 1178, 18 U. S. C. § 413, especially 18 U. S. C. § 416.