**Albert Hugh JOLLEY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 15502.

United States Court of Appeals
Fifth Circuit.

April 6, 1956.

Henry N. Payton, Newnan, Ga., Stonewall Dyer, Atlanta, Ga., for appellant.

Charles D. Read, Jr., Asst. U. S. Atty., James W. Dorsey, U. S. Atty., John W. Stokes, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

The appellant appeals alone from a judgment of conviction for conspiracy[1] to violate two sections of the tax laws[2] pertaining to the unlawful possession, removal and concealment of non-tax-paid whiskey. One co-defendant, Charlie Frank Hollis, was tried with appellant, and both were convicted. According to appellant's brief, a third co-defendant, Donald A. Jones, had previously entered a plea of nolo contendere. The indictment named as co-conspirators not indicted five other men, Norman Holmes, Willie Roy Roberts, Lemon Canion, J. R. Williams and Curtis W. West, and also "a party and parties to the Grand Jurors unknown." It alleged that the conspiracy began in August, 1951, and continued from day to day to the return of the indictment on February 17, 1954.

To effect the objects and purposes of the conspiracy, the indictment alleged that the defendants and co-conspirators committed numerous overt acts among which thirteen were specified. The district court charged the jury that there was no substantial evidence to prove alleged overt acts numbered 5, 8 and 10.

1. 18 U.S.C.A. § 371.

2. 26 U.S.C.A. §§ 3321 and 2803.

We will briefly summarize the evidence which the jury was authorized to believe tending to prove the remaining ten alleged overt acts.

Overt Act No. 1: "That, on or about August 8, 1951, in Fulton County, Georgia, Albert Hugh Jolley and Willie Roy Roberts possessed 156 gallons of non-tax-paid whiskey, and transferred said whiskey from a 1941 Stakebody Truck to a 1935 Ford Coupe."

At the beginning of the trial, appellant's counsel admitted that appellant and Willie Roy Roberts did, in August, 1951, possess 150 gallons of non-tax-paid whiskey, but denied that such possession was connected with any alleged conspiracy. The Government introduced testimony of James L. Collins, who told of having gone to appellant's home in August, 1951, along with two other officers and there finding in appellant's yard and on a truck parked there about 150 gallons of non-tax-paid whiskey, and arresting appellant and Roberts therefor. Both of them had pleaded guilty to the offense against the State of Georgia arising from the same acts.

Overt Act No. 2: "That, on December 29, 1951, in Fulton County, Georgia, Albert Hugh Jolley purchased a 1942 Ford automobile, motor No. 18–6847486, from Albert E. Moon."

Overt Act No. 3: "That, on January 8, 1952, in Fulton County, Georgia, Charlie Frank Hollis transported in a 1942 Ford automobile, described in the paragraph just preceding, 108 gallons of non-tax-paid whiskey."

Overt Act No. 4: "That, on January 8, 1952, Albert Hugh Jolley drove another automobile owned by him immediately in front of the said 1942 Ford automobile referred to in the two preceding paragraphs, at the time the said Ford was seized while transporting 108 gallons of non-tax-paid liquor."

Albert E. Moon testified that in 1951 he bought a 1942 Ford automobile from a Mr. Bearden, who was living in Marietta, Georgia; that he owed a finance company which he designated as "North American Loan Company" some money on the automobile; that he advertised in an Atlanta newspaper for the sale of the car and received one answer, that being from the appellant to whom he sold the car; that the appellant and he went to the finance company to have the car refinanced in the appellant's name. He further testified:

"* * * and we filled out the papers, his information and credit reference and all, and after he done that, he decided, he didn't want to pay the interest on the loan and we went back over to my house, and he said, he still wanted the car, and said he would just pay me cash for it then."

Still further, Mr. Moon testified that the tax registration on the car has been left in the name of Mr. Bearden, the man from whom he had purchased the car.

█ A. A. Berry testified that he was Assistant Manager of "American Loan and Thrift Corporation",[3] and in such capacity had custody of the records of that company; that an information sheet which he produced, and which was introduced in evidence as the Government's Exhibit No. 1, was an official record kept in the regular course of business[4] and showed that on December 29,

---

3. Appellant emphasizes the difference in name of this finance company and the "North American Loan Company" referred to by the witness Moon, and appellee replies that Moon had doubtless had a lapse of memory on this detail, brought about by the several years intervening between the transaction and the trial. We think there were sufficient circumstances from which the jury could infer that the witnesses were testifying about the same finance company.

4. The information sheet of the finance company having been made in the regular course of its business was admissible in evidence. 28 U.S.C.A. § 1732; Duncan v. United States, 5 Cir., 197 F.2d 935, 937.

1951, some employee of the company took an application for a loan on a 1942 two-door Ford automobile from Albert H. and Bertie Jolley.

Miss Inez Kinney testified that she was file clerk in the Motor Vehicle License Unit of the Revenue Department of Georgia and had custody of the files of automobile vehicle registrations in that State. She produced the 1951 license tag registration for a 1942 two-door Ford, being tag number ES–5700, registered in the name of Vester C. Bearden of Marietta, Georgia.

George Bradley testified that he was a State Trooper; that on or about January 8, 1952, between 7:30 and 8 o'clock in the morning, he had passed on the highway two automobiles being driven 200 or 300 feet apart and had recognized the appellant as the driver of the lead automobile; that, after passing the cars, he pulled into a service station and waited until both cars had passed, travelling at about the same distance apart; that he then fell in behind the second automobile, waited until it got to a shoulder wide enough to pull off without interfering with traffic, sounded his siren and pulled the automobile off on the shoulder; that two men jumped out of the car, ran and escaped; that the car contained 120 to 125 gallons of non-tax-paid whiskey; that it was a 1942 Ford automobile, bearing a 1951 Georgia tag, ES–5700.

Overt Act No. 6: "That, on or about August 26, 1952, Albert Hugh Jolley possessed 21 gallons of non-tax-paid whiskey near his house in Fulton County, Georgia."

Officer W. Earl Thompson testified that on August 26, 1952, he and Officer Adams were patrolling the Old National Highway about two miles from the appellant's residence, when they stopped D. A. Jones and Charlie Frank Hollis in an automobile which they found to contain 10 one-half gallons of non-tax-paid whiskey; that, after arresting Jones and Hollis, they made further investigations at the appellant's premises;

that about 100 feet behind appellant's barn they found 2 one-half gallons of non-tax-paid whiskey and further on from there in the same area they found 20 one-half gallons of non-tax-paid whiskey; that appellant's house was the closest one to the 2 one-half gallons, but there were other houses closer to the 20 one-half gallons; that there was no path leading to the 20 half gallons and the area was just open pasture; that he does not know who owned the land on which the whiskey was found.

Overt Act No. 7: "That, on or about August 29, 1952, Charlie Frank Hollis, J. R. Williams and Albert Hugh Jolley went to the home of Lemon Canion in Fulton County, Georgia, carrying a large quantity of non-tax-paid whiskey, and 'stashed' the same near the house of the said Canion."

On or about August 29, 1952, officers found near the home of Lemon Canion, not in Fulton County but just over the line in Clayton County, Georgia, 4 one-half gallons of whiskey, several empty cases of half gallon jars, and in a graveyard back of his house 35 or 40 gallons of whiskey, all non-tax-paid. This house is distant from appellant's house seven-tenths of a mile by walking and a mile and four-tenths by road. Lemon Canion testified so vaguely that the Government plead entrapment by the witness. According to his testimony, the liquor belonged to someone other than himself but he did not know to whom, and was unable to identify the person or persons who had left the whiskey on his premises.

Overt Act No. 9: "That, on September 6, 1952, Albert Hugh Jolley in Fulton County, Georgia, employed Curtis W. West to make a trip to North Georgia in an automobile and bring back a load of non-tax-paid liquor, and he arranged for Charlie Frank Hollis to accompany said West and paid the expenses of such trip; and the said load of liquor was brought back to a place near College Park, Georgia, and un-

loaded; and the said Albert Hugh Jolley thereupon directed the said West and the said Hollis to deliver three cases of the said non-tax-paid liquor to a customer in East Point, Georgia, where the said Hollis and the said West were arrested about three o'clock in the morning."

Officer Ellis Whitfield testified that on or about September 7, 1952, at about 2:30 A.M., he and another officer stopped a car on Holcombe Street in East Point, Georgia, and found that it contained 38½ gallons of fruit jars of non-tax-paid whiskey. In the car were Curtis West, who was driving, and Charlie Frank Hollis. West stated that the whiskey was his and that Hollis had nothing to do with it. They arrested West but not Hollis.

Curtis West testified that his previous statement that Hollis had nothing to do with the whiskey was false; that, in fact, he was hauling the whiskey for the appellant, who had promised to pay him $50.00 for the trip and had sent Charlie Frank Hollis along to show him the way; that Hollis paid for the gas and the whiskey; that, after they had unloaded the whiskey, the appellant directed them to return and take three cases to East Point, and on that trip they were arrested; that the appellant had agreed that, if he were caught, appellant would pay his fine and get his car back, but for the witness "to take the rap"; that appellant later told him that he did not have the money to pay his fine, in fact, did not pay him the $50.00, but had bought tires for the car costing $32.00 and did give him two or three dollars in cash.[5]

Overt Act No. 11 : "That, on or about July 13, in Fulton County, Georgia, Albert Hugh Jolley furnished to Willie Roy Roberts a 1942 Ford Coupe for the purpose of transporting non-tax-paid whiskey, and the said Willie Roy Roberts transported in said automobile 102½ gallons of non-tax-paid whiskey on that date."

Jack Berry testified that on the night of July 13, 1953, he and other officers stopped an automobile on Gordon Road in Fulton County, Georgia, and arrested Willie Roy Roberts. The car which Roberts was driving was a 1942 Ford and contained 102½ gallons of non-tax-paid whiskey.

Willie Roy Roberts testified that he worked for the appellant as a mechanic from about the middle of June, 1953, for about two months; that the appellant paid him $40.00 a week; that he remembered being arrested on July 13, 1953; that at the time of the arrest he had 102½ gallons of whiskey and that the whiskey and the automobile belonged to him. The Government pleaded entrapment by this witness; the witness admitted having made previous conflicting statements, and claimed that parts of such statements were untrue.[6]

Overt Act No. 12: "That, on August 4, 1953, Willie Roy Roberts transported 30 gallons of non-tax-paid whiskey in Cobb County, Georgia, in a 1936 Ford automobile furnished to him by Albert Hugh Jolley."

Willie Roy Roberts was arrested on August 4, 1953, in an automobile with

---

5. Appellant's only complaint as to the proof of overt act No. 9 is that Curtis West "was impeached by another Government witness." Of course, however, the jury alone was authorized to pass on the credibility of the witnesses.

6. The appellant urges that the district court erred in denying appellant's motion for a mistrial because of the publication in a local newspaper of the action of the prosecuting attorney in having

Willie Roy Roberts arrested upon a charge of perjury. The newspaper publication is not before us, nor is it shown that any of the jurors read or were influenced by it. We think that the district court did not abuse its discretion in refusing to declare a mistrial. See United States v. Potash, 2 Cir., 118 F.2d 54, 56. Further, appellant has shown no prejudice from the publication. See Reynolds v. United States, 5 Cir., 225 F.2d 123, 128, 129.

30 gallons of non-tax-paid whiskey. The arrest was made in Cobb County "on a little woods road", "it was a one-way affair for the most part, and just ruts to follow is about all you had in the way of a road". In front of Willie Roy Roberts' automobile was another car, which got away. As the officers came back into the Queens Mill Road from which the little woods road took off, they saw parked at a distance of probably 20 or 30 yards an automobile in which the appellant and other persons were sitting; the time was about 9 or 9:30 at night.

Again, Willie Roy Roberts claimed that the whiskey for which he was arrested on August 4, 1953 was his own whiskey and declined to connect the appellant with it.

Overt Act No. 13: "That, on or about August 3, 1953, in Cobb County, Georgia, at the store of Mrs. Mamie Flynn, Albert Hugh Jolley made an arrangement to deliver non-tax-paid whiskey to a person whom Jolley called 'Joe'."

Mrs. Mamie Flynn testified that she operated a grocery store just off the Gordon Road from the River Road in Cobb County, Georgia; that in her store, on August 13, 1953, she heard the appellant talking to a man named Joe, making a deal about some whiskey; that the appellant agreed to bring the whiskey the next day but she did not hear either of them say how much whiskey was involved; that the next day appellant came to her store and "he asked me * * * where was Joe, and I told him I didn't know, and he says, I want my money for my whiskey, and I said, I know nothing about any money for whiskey, and he said, you ought to, because you overheard what was said."

At the close of the evidence, the appellant moved for a judgment of acquittal upon the ground that there was a fatal variance between the indictment charging one continuous conspiracy and the proof showing, according to appellant's view, two or more conspiracies, and, further, on the ground of the insufficiency of the evidence.

■ It was, of course, not necessary that each of the alleged conspirators be connected by the proof with the crime, so long as the appellant himself was proved beyond a reasonable doubt to be guilty of the conspiracy.[7] Nor was it necessary that the evidence establish the appellant's guilt of each and all of the overt acts charged, but only of the commission of any one or more thereof to effect the objects and purposes of the conspiracy.[8] While the evidence against the appellant as to some of the overt acts was weak, overt act No. 1 was admitted and there was certainly ample evidence to justify submission to the jury on overt acts numbered 2, 3, 4, 9 and 13.

■ Under the evidence in this case, we think that it was for the jury to say whether there was any conspiracy and if so, whether one or more than one. If more than one conspiracy was proved, of at least one of which the appellant was guilty, it is clear that there was no variance affecting his substantial rights.[9]

■ The appellant urges that the district court erred in refusing to admit evidence that he had been acquitted in the State Courts when charged with the same acts described in alleged overt acts numbers 6 and 9. The double jeopardy provision of the Fifth Amendment does not stand as a bar to federal prosecu-

7. Berger v. United States, 295 U.S. 78, 81, 55 S.Ct. 629, 79 L.Ed. 1314.

8. Schefano v. United States, 5 Cir., 84 F. 2d 513, 515; Robinson v. United States, 93 U.S.App.D.C. 347, 210 F.2d 29, 32.

9. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A.; 28 U.S.C.A. § 2111; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154.

tion though a conviction or acquittal in the state courts based on the same acts has already been obtained.[10] Each sovereignty may proceed with prosecution uninfluenced by the action of the other. The result of the trial in the State Courts has no bearing on the trial in the federal courts.[11] A fortiori is that true here in the absence of an offer to prove that the evidence introduced on the two trials was the same.

We find no reversible error in the record and the judgment is therefore

Affirmed.

CAMERON, Circuit Judge (concurring specially).

The thread of conspiracy upon which this conviction depends is thin indeed. After reading the briefs and hearing the oral argument I was in great doubt whether appellant's conviction should stand. But reading the record revealed that five of the persons with whom appellant was alleged to have conspired were Negroes, one of whom had been employed by him as a farm laborer and automobile mechanic; another was a close confederate in liquor deals, whose fines appellant had paid on one or more occasions.

The relationship thus depicted, known to the Court below, and to us, and the understanding of its implications furnish an ingredient of proof which fills the interstices so evident without them, and explain much in the record which otherwise is without probative significance. Supplementing the facts otherwise appearing by this knowledge and understanding, it is rather plain that appellant furnished the brains and the money and the leadership in the conspiracy and the others were pliant pawns responding to his will and desire. This added element makes it possible for me to concur in affirming the judgment of conviction.

10. Jerome v. United States, 318 U.S. 101, 105, 63 S.Ct. 483, 87 L.Ed. 640; United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314; Hebert v. Louisiana, 272 U.S. 312, 314, 47 S.Ct. 103, 71 L.Ed. 270; Serio v. United States, 5 Cir., 203 F.2d 576.

11. Martin v. United States, 8 Cir., 271 F. 685.