**John DOE, Respondent,**

**v.**

**James F. KEATHLEY, Appellant.**

**No. WD 72121.**

Missouri Court of Appeals,
Western District.

April 26, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 2011.

Application for Transfer
Denied Aug. 30, 2011.

Jeremiah Morgan, Jefferson City, MO, for appellant.

Mark Charles Prugh, Waynesville, MO, for respondent.

Before: ALOK AHUJA, P.J., and VICTOR C. HOWARD and CYNTHIA L. MARTIN, JJ.

ALOK AHUJA, Judge.

Colonel James Keathley, Superintendent of the Missouri Highway Patrol, appeals from a declaratory judgment in favor of a Missouri resident styled John Doe.[1] Doe pled guilty in the Circuit Court of St. Louis County in October 1992 to a charge of sexual abuse in the first degree. He was given probation and a suspended imposition of sentence. The Circuit Court of Cole County found that Doe was not required to register under the federal Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16901–16929, because the disposition of his sex offense did not constitute a "conviction" under Missouri law. Because the meaning of "convicted" under SORNA is a matter of federal, not state, law, and because under federal law a "conviction" encompasses a guilty plea followed by probation and a suspended imposition of sentence, the judgment is reversed.

## Factual Background

Doe entered an *Alford*[2] plea to the charge of sexual abuse in the first degree in the Circuit Court of St. Louis County on October 13, 1992. Doe was ordered to serve five years' probation with counseling, and was given a suspended imposition of sentence ("SIS").

Following his guilty plea, Doe allegedly completed his counseling in March 1995, and was released from probation in March 1996 (nineteen months early). Upon the passage of Missouri's Sex Offender Registration Act ("SORA"), §§ 589.400 to 589.425,[3] in 1995, Doe registered as a sex offender. In 2006, however, the Missouri Supreme Court held that, under article I, § 13 of the Missouri Constitution, SORA could not constitutionally be applied to offenders convicted before the state statute's effective date. *Doe v. Phillips*, 194 S.W.3d 833, 852 (Mo. banc 2006). The Supreme Court has recognized, however, that the federal SORNA, enacted in 2006, independently mandates sex-offender registration for individuals convicted of sex offenses

---

1. Colonel Keathley retired as Superintendent of the Highway Patrol in February 2010, and was succeeded in that position by Colonel Ron Replogle. Because no substitution of parties has been ordered, we continue to refer to Coloney Keathley as the appellant in this case.

2. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), holds that a criminal defendant may enter a knowing, voluntary and effective guilty plea, despite the defendant's protestations of innocence at the time of entering his plea. *Id.* at 37, 91 S.Ct. 160.

3. Unless otherwise indicated, citations to state statutes refer to the RSMo 2000, updated through the 2010 Cumulative Supplement.

prior to SORNA's effective date, and that the federal statute is not subject to the Missouri Constitution's prohibition on retrospective laws. *Doe v. Keathley,* 290 S.W.3d 719, 720 (Mo. banc 2009). *See also Droney v. Fitch,* No. 4:10–CV–114 CAS, 2011 WL 890704, at *3–*4 (E.D.Mo. March 14, 2011).

Doe filed a petition seeking declaratory and mandamus relief in the Circuit Court of Cole County on November 22, 2006, seeking to be free of SORA's registration requirements. Although Keathley conceded that Doe did not need to register under SORA in light of the *Doe v. Phillips* decision, he nevertheless filed a motion for summary judgment on the basis that Doe had an independent obligation to register under SORNA. The circuit court initially ruled for Keathley, concluding that, "[u]nder federal law, a suspended imposition of sentence is considered a conviction." After further briefing, however, the trial court reversed course, finding that "[u]nder Missouri law, a suspended imposition of sentence is not a conviction.... [A] suspended imposition of sentence will not satisfy a federal statute that requires a conviction to trigger its application." Keathley appeals.

### Analysis

■ Keathley raises a single Point Relied On, arguing that Doe must register as a sex offender because his prior guilty plea with an SIS means that he was "convicted" of a covered sex offense within the meaning of SORNA. Keathley's arguments concerning the proper interpretation of SORNA present questions of law which we review *de novo,* without deference to the circuit court's judgment. *See, e.g., Kivland v. Columbia Orthopaedic Grp., LLP,* 331 S.W.3d 299, 311 (Mo. banc 2011); *State v. Andrews,* 329 S.W.3d 369, 371 (Mo. banc 2010).

Since 1994, federal law has required States, as a condition for the receipt of certain law enforcement funds, to maintain federally compliant systems for sex-offender registration and community notification. In an effort to make these state schemes more comprehensive, uniform, and effective, Congress in 2006 enacted the Sex Offender Registration and Notification Act (SORNA or Act) as part of the Adam Walsh Child Protection and Safety Act, Pub.L. 109–248, Tit. I, 120 Stat. 590.

*Carr v. United States,* —— U.S. ——, 130 S.Ct. 2229, 2232, 176 L.Ed.2d 1152 (2010).

Among its many provisions, SORNA instructs States to maintain sex-offender registries that compile an array of information about sex offenders, § 16914; to make this information publicly available online, § 16918; to share the information with other jurisdictions and with the Attorney General for inclusion in a comprehensive national sex-offender registry, §§ 16919–16921; and to "provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter," § 16913(e). Sex offenders, in turn, are required to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student," § 16913(a), and to appear in person periodically to "allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered," § 16916.

*Id.* at 2240–41.

The individuals subject to SORNA's registration requirements are identified in 42 U.S.C. § 16911(1), which provides that "[t]he term 'sex offender' means an indi-

vidual who was *convicted* of a sex offense." (Emphasis added.) The statute does not explicitly define "convicted," or indicate which body of law controls the term's meaning.

## I.

■ Keathley first argues that federal, not state, law controls the interpretation of the term "convicted" as it appears in SOR-NA. Doe argues, to the contrary, that the determination of whether a particular disposition of criminal charges constitutes a "conviction" is governed by the law of the state which rendered the disposition. The circuit court applied state law concerning the meaning of a "conviction" in ruling in Doe's favor.

■ The general rule is that, unless a contrary intention plainly appears, the meaning of terms used in a federal statute should be determined by federal law, and is not dependent on state-law definitions of the terms used in the federal statute.

While the meaning of a federal statute is necessarily a federal question in the sense that its construction remains subject to this Court's supervision, Congress sometimes intends that a statutory term be given content by the application of state law. We start, however, with the general assumption that "in the absence of a plain indication to the contrary, ... Congress when it enacts a statute is not making the application of the federal act dependent on state law." One reason for this rule of construction is that federal statutes are generally intended to have uniform nationwide application. Accordingly, the cases in which we have found that Congress intended a state-law definition of a statutory term have often been those where uniformity clearly was not intended. A second reason for the presumption against the application of state law is the danger that "the federal program would

be impaired if state law were to control." For this reason, "we look to the purpose of the statute to ascertain what is intended."

*Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 43–44, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (quoting *Jerome v. United States,* 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640 (1943); other citations omitted).

The United States Supreme Court has applied this principle to the interpretation of another federal statute which, like SOR-NA, does not itself define the term "convicted." *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), involved the application of 18 U.S.C. §§ 922(g) and (h), which prohibited an individual "who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from shipping, transporting, or receiving firearms or ammunition in interstate commerce. *Id.* at 105, 103 S.Ct. 986. In *Dickerson,* a principal (Kennison) of an entity seeking a federal firearms dealer license had previously pled guilty to a charge of carrying a concealed weapon in an Iowa state court. *Id.* at 107–08, 103 S.Ct. 986. Kennison's sentencing was deferred by the state court, and no judgment was entered against him; instead, he was placed on probation. *Id.* At the conclusion of his term of probation, the record of the proceeding was expunged under an Iowa statute providing that, "[u]pon discharge from probation, if judgment has been deferred ... the court's criminal record with reference to the deferred judgment shall be expunged." *Id.* at 108 n. 4 (quoting statute).

*Dickerson* held that federal law, not state law, controlled the question whether Kennison had been "convicted" in the Iowa state-court proceeding. With respect to

the issue of whether Kennison had *initially* been "convicted," the Court merely observed that this issue "is necessarily ... a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State. This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of 'conviction.'" *Id.* at 111–12 (citations omitted).

With respect to the later expungement of Kennison's conviction, the Court likewise held that federal law controlled. In this connection, the Court cited numerous considerations which justified the application of uniform federal rules. First, the Court observed that "the purpose of the statute would be frustrated by a ruling that gave effect to state expunctions; a state expunction typically does not focus upon the question with which [the statute] is concerned, namely, whether the convicted person is fit to engage in the firearms business or to possess a firearm." *Id.* at 119. Second, the Court noted that the legislative history of the federal statute "reveals that Congress believed a uniform national program was necessary to assist in curbing the illegal use of firearms." *Id.* at 120. Finally, the Court concluded that deferring to the laws of the various states "would seriously hamper effective enforcement" of the federal statute, and would present "perplexing problems" both to "those required to enforce federal gun control laws as well as those bound by their provisions." *Id.* at 121–22.

> Congress, in framing [the statute], took pains to avoid the very problems that [reference to state expungement laws] inevitably would create, such as individualized federal treatment of every expunction law. Congress used unambiguous language in attaching gun control disabilities to any person "who has been convicted" of a qualifying offense. We give full effect to that language.
>
> *Id.* at 122.

Under these decisions, the meaning to be given to the term "convicted" as used in SORNA must be decided under federal, not state, law. Congress plainly intended for SORNA to establish a comprehensive, and uniform, nationwide system for sex-offender registration. As *Carr* recognized, Congress enacted SORNA "[i]n an effort to make [existing] state [registration] schemes more comprehensive, uniform, and effective," 130 S.Ct. at 2232, and "to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks." *Id.* at 2240. Congress' intent to establish a uniform national sex-offender registration system is made explicit in SORNA's first section, which contains the following declaration of purpose: "[i]n order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, *Congress in this chapter establishes a comprehensive national system* for the registration of those offenders." 42 U.S.C. § 16901 (emphasis added).

SORNA provides that "[t]he Attorney General shall issue guidelines and regulations to interpret and implement this subchapter." 42 U.S.C. § 16912(b). In the comments accompanying the publication of his final guidelines, the Attorney General explained that the term "convicted" must be interpreted by federal law, and in a uniform manner, and that states were not at liberty to vary the substantive reach of the statute by denominating particular dispositions of criminal charges as something other than "convictions."

The issue raised by these comments[, which suggested that SORNA be limited to dispositions denominated as "convictions" under state law,] is whether individual jurisdictions have a free hand to

stipulate that the dispositions of criminal cases do not constitute "convictions" for purposes of SORNA. If that were the case, a jurisdiction could make the SORNA registration and notification requirements inapplicable to its sex offenders merely by varying its terminology—referring to certain classes of criminal convictions for sex offenses by some term other than "conviction"—and there would then be no national baseline of covered sex offenders and registration/notification requirements applicable thereto.

Such an approach would be inconsistent with SORNA's purpose to establish "a comprehensive national system for the registration of [sex] offenders." [42 U.S.C. § 16901]. SORNA's requirements apply to anyone who "was convicted of a sex offense." *See* [42 U.S.C. § 16911(1) ] (defining "sex offender"), [42 U.S.C. § 16913] (applying SORNA's registration requirements to "sex offender[s]"). While the statutory definitions of sex offenses falling within SORNA's registration categories, see [42 U.S.C. § 16911](5)–(8), will vary from jurisdiction to jurisdiction, the meaning of "convicted" for purposes of SORNA is a matter of federal law, and its applicability is not determined by the terminology a jurisdiction uses in referring to the disposition of a criminal case. Notably, in light of [42 U.S.C. § 16911](8), even certain juvenile delinquents are deemed to be "convicted" and hence required to register under SORNA's standards, if the juvenile is at least 14 years old and the offense for which the juvenile was adjudicated delinquent is sufficiently serious. But under these commenters' proposal, jurisdictions could avoid requiring registration for an adult

offender convicted of such a crime merely by using some other term in referring to the conviction (e.g., "youthful offender disposition").

SORNA does not afford such latitude to waive its requirements in this manner and no change has been made in the final guidelines on this point.

73 Fed.Reg. 38,030, 38,040 (July 2, 2008).

We find further confirmation that the meaning of "convicted" should be governed by federal law in what SORNA does *not* say. Although SORNA does not expressly define the word "convicted," it also contains no provision specifying that the term should be interpreted according to state law. Notably, Congress responded to the decision in *Dickerson* by amending the relevant firearms dealer licensing statute to specify that "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). This provision demonstrates that Congress was fully capable of incorporating state-law definitions of a "conviction" where it determined that the application of state law was consistent with the purposes of a particular federal statute. The lack of a similar provision in SORNA is telling. *See United States v. Ortega*, 150 F.3d 937, 948 (8th Cir.1998) (holding that federal law governs question whether Missouri guilty plea, followed by probation and SIS, constitutes a prior conviction under 21 U.S.C. § 841(b), a sentence-enhancement statute; "Because Congress provided no explicit language to the contrary in section 841(b), we ... apply federal law to conclude that Ortega's ... guilty plea, for which he received a suspended imposition of sentence, qualifies as a prior final felony drug conviction for purposes of section 841(b).").[4]

---

4. Doe cites *United States v. Hill*, 210 F.3d 881, 883 (8th Cir.2000), and *United States v. Solomon*, 826 F.Supp. 1221, 1222 (E.D.Mo.

1993), for the proposition that Missouri law controls the determination whether his October 1992 disposition is a "conviction." But

## II.

We now turn to the question whether Doe's October 1992 guilty plea, which was followed only by a term of probation (which Doe successfully completed) and a suspended imposition of sentence, constitutes a "convict[ion]" within the meaning of 42 U.S.C. § 16911(1). Although we recognize that Missouri law might well dictate a contrary result,[5] we hold that under federal law, Doe was "convicted" of a sex offense, and is therefore subject to SORNA's registration requirements.

Once again, we begin with the United States Supreme Court's decision in *Dickerson*, 460 U.S. 103, 103 S.Ct. 986.[6] As in this case, in *Dickerson* Kennison pled guilty to a charge, but sentencing was deferred and he was placed on probation. *Id.* at 107, 103 S.Ct. 986. Although Kennison successfully completed his probation and his conviction was subsequently expunged, *id.* at 108, 103 S.Ct. 986, the Supreme Court held that he had been "convicted," and was thus barred from holding a firearms dealer's license.

The Court first emphasized that the statute at issue, 18 U.S.C. § 922(g), spoke in "sweeping" terms, referring to any person who has been convicted of particular offenses. *Id.* at 111, 103 S.Ct. 986. "No modifier is present, and nothing suggests any restriction on the scope of the term 'convicted.' ... Nothing on the face of the statute suggests a congressional intent to limit its coverage." *Id.* (citations and internal quotation marks omitted). As in *Dickerson*, the relevant definition of "sex offender" in 42 U.S.C. §§ 16911(1) applies to any person "who was convicted of a sex offense," without qualification.

*Dickerson* suggests that Kennison's guilty plea, standing alone, would be sufficient to constitute a "conviction." The Court noted:

> [Kennison] voluntarily, in negotiation, entered a plea of guilty to a disqualifying crime. In some circumstances, we have considered a guilty plea alone enough to constitute a "conviction": "A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence."

*Id.* at 112–13, 103 S.Ct. 986 (citation omitted).[7] The Court drew further support for the conclusion that Kennison had been

---

both *Hill* and *Solomon* applied 18 U.S.C. § 921(a)(20), and are accordingly distinguishable.

**5.** *See, e.g., Yale v. City of Indep.*, 846 S.W.2d 193, 195 (Mo. banc 1993) ("The obvious legislative purpose of the sentencing alternative of suspended imposition of sentence is to allow a defendant to avoid the stigma of a lifetime conviction and the punitive collateral consequences that follow."); *id.* at 196 ("The word 'conviction,' standing alone, does not include the disposition of a 'suspended imposition of sentence' ... in legislative enactments where it may be used as a predicate for punitive action in a collateral proceeding.").

**6.** Although Congress overturned the specific result in *Dickerson* by enacting 21 U.S.C. § 921(a)(20), which specifies that the law of the rendering jurisdiction will control the characterization of a prior criminal disposition for the purpose of §§ 922(g) and (h), *Dickerson's* interpretation of the undefined term "convicted" as it appears in federal statutes continues to be applied. *See, e.g., United States v. McAllister*, 29 F.3d 1180, 1184–85 (7th Cir.1994).

**7.** *See also, e.g., Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.").

"convicted" from circumstances in addition to his guilty plea:

> Here, we do have more. The state judge who noted Kennison's plea placed him on probation. To be sure, there was no written adjudication of guilt and there was no formal pronouncement of a sentence of imprisonment for a specified term. But that was due to special provisions of Iowa statutory law and procedure. It was plainly irrelevant to Congress whether the individual in question actually receives a prison term; the statute imposes disabilities on one convicted of "a crime *punishable* by imprisonment for a term exceeding one year." § 922(g) (emphasis supplied). It is also plain that one cannot be placed on probation if the court does not deem him to be guilty of a crime—in this case a crime that Congress considered demonstrative of unreliability with firearms. Thus, for purposes of the federal gun control laws, we equate a plea of guilty and its notation by the state court, followed by a sentence of probation, with being "convicted" within the language of §§ 922(g) and (h).

*Id.* at 113–14, 103 S.Ct. 986.

Here, we also have "more" than a simple guilty plea. As in *Dickerson,* not only did Doe enter a plea of guilty to a sex offense, but the trial court imposed a term of probation upon him as a result of his plea. His guilt of the crime with which he was charged was thereby adjudicated—in *Dickerson's* words, "one cannot be placed on probation if the court does not deem him to be guilty of a crime." 460 U.S. at 113–14, 103 S.Ct. 986. Further, the SORNA definition of a sex offender applies to anyone "convicted" of a sex offense, without regard to the punishment actually imposed. The statute also establishes a hierarchy of covered sex offenders which relies, in part, on whether they were convicted of offenses *"punishable* by imprisonment for more than 1 year." 42 U.S.C. §§ 16911(3), (4) (emphasis added). Thus, as in *Dickerson,* the statute indicates that "[i]t was plainly irrelevant to Congress whether the individual in question actually receives a prison term." 460 U.S. at 113, 103 S.Ct. 986.[8]

Other federal decisions similarly hold that state-court dispositions in which a defendant is placed on probation, without the imposition of a sentence of imprisonment, constitute "convictions" for purposes of federal statutes. Thus, in *United States v. Woods,* 696 F.2d 566 (8th Cir.1982), which was cited favorably in *Dickerson,* 460 U.S. at 114, 103 S.Ct. 986, the defendant appealed his conviction under 18 U.S.C. § 1202(a)(1) for falsely certifying that he was not a previously convicted felon, in connection with the purchase of a firearm. 696 F.2d at 567. The defendant in *Woods*—like Doe—argued that his previous Missouri disposition was not a conviction because it was only a guilty plea with an SIS. *Woods* rejected this argument: "the federal case law demonstrates that defendant was 'convicted' within the meaning of § 1202. The federal courts

---

**8.** Later in its opinion, the Court also held that the fact that Kennison's conviction was later expunged did not alter its status. The Court reasoned that:

> [E]xpunction does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty. Expunction in Iowa means no more than that the State has provided a means for the trial court not to accord a conviction certain continuing effects under state law.

*Id.* at 115, 103 S.Ct. 986. Here too, the fact that Doe was given an SIS says nothing about the legality of his conviction, or his actual innocence; the SIS alternative merely provided the sentencing court with a mechanism to ameliorate certain of the collateral consequences of the disposition.

have clearly established that a voluntary plea of guilty is a conviction." *Id.* at 569. "The normal meaning of the term 'conviction' is that criminal proceeding where guilt is determined, either by verdict or plea. The sentencing is a second proceeding wherein the court decrees judgment and announces the sentence defendant is to receive." *Id.* at 570.

■ Similarly, federal courts have repeatedly and consistently held that state-court dispositions of criminal charges which result in probation, but no final judgment of conviction, nevertheless constitute "convictions" under 21 U.S.C. § 841, and therefore trigger the sentence-enhancement provisions of that statute.[9] Of particular relevance here, the Eighth Circuit has held in numerous cases that Missouri state-court criminal dispositions which resulted in a term of probation and a suspended imposition of sentence constitute prior "convictions" under 21 U.S.C. § 841. Even though those dispositions might not be deemed "convictions" under state law, they qualify as prior "convictions" under the federal-law principle that " 'deferred adjudications or probated sentences constitute convictions in the context of § 841.' " *United States v. Ortega,* 150 F.3d 937, 948 (8th Cir.1998) (quoting *United States v. Cisneros,* 112 F.3d 1272, 1281 (5th Cir.1997), and collecting other cases); *see also e.g., United States v. Henderson,* 613 F.3d 1177, 1185 (8th Cir.2010); *United States v. Davis,* 417 F.3d 909, 913 (8th Cir.2005); *United States v. Slicer,* 361 F.3d 1085, 1087 (8th Cir.2004); *United States v. Franklin,* 250 F.3d 653, 665 (8th Cir.2001).

Under these decisions, we are compelled to conclude that due to his October 1992 guilty plea for sexual abuse in the first degree, Doe is "an individual who was convicted of a sex offense" within the meaning of 42 U.S.C. § 16911(1), and that he is therefore required by SORNA to register as a sex offender.[10]

---

9. *See, e.g., United States v. Rivera–Rodriguez,* 617 F.3d 581, 609–10 (1st Cir.2010) (treating as "convictions" prior dispositions in Puerto Rico Superior Court which resulted in "probation for a term of eighteen months under a rehabilitation program," and expungement of defendant's record following successful completion of probation term); *United States v. Law,* 528 F.3d 888, 911 (D.C.Cir.2008) ("For purposes of sentences imposed under § 841, however, Congress has not exempted from the 'prior convictions' that must be counted those convictions removed from a criminal record for policy reasons unrelated to innocence or an error of law. The courts of appeals that have considered this § 841 question therefore have counted prior felony drug convictions even where those convictions had been set aside, expunged, or otherwise removed from a defendant's record for such reasons."; collecting cases); *United States v. Fazande,* 487 F.3d 307, 308 (5th Cir.2007) ("This court has held that a 'guilty plea that resulted in a deferred adjudication [constituted] a "prior conviction" for purposes of sentence enhancement' under § 841(b)(1)(A)." (citation omitted)).

10. 42 U.S.C. § 16913(b) contains the initial registration requirements for sex offenders. It provides:

Initial registration
The sex offender shall initially register—
(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

Section 16913(b)(2) requires, at a minimum, that a sex offender "be[ ] sentenced" before the offender is required to register; that provision also makes clear that such "sentencing" may include consequences other than "a term of imprisonment." Here, the St. Louis County Circuit Court suspended the imposition of sentence on Doe, and he was placed on probation. While it may appear strained to suggest in these circumstances that Doe had been "sentenced to probation," he does not rely on 42 U.S.C. § 16913(b), and *Dickerson* indicates that, under federal law, the imposition of a term of probation constitutes a "sentence." *See* 460 U.S. at 114 ("[W]e equate a plea of guilty and its notation by the

## III.

Doe asserts three additional arguments in an attempt to justify the circuit court's judgment. None are persuasive.

■ First, relying on *Carr*, 130 S.Ct. 2229, Doe contends that, because the State failed to prove that he traveled in interstate commerce after SORNA's passage, he is not required to register. But *Carr* merely held that, to be subject to *federal criminal prosecution* under 18 U.S.C. § 2250, an individual must have traveled in interstate or foreign commerce subsequent to the Act's passage. *Carr* recognizes that state administrative and enforcement mechanisms, not federal criminal prosecution under § 2250, "stand at the center of Congress' effort to account for missing sex offenders" in SORNA. *Id.* at 2241. Individuals are subject to the obligation to register with state authorities as a sex offender independent of any interstate-travel component required to justify federal criminal enforcement. Indeed, one of the elements of federal criminal prosecution under 18 U.S.C. § 2250—separate from, and in addition to, the requirement of post-enactment interstate travel—is that the defendant "is required to register under the Sex Offender Registration and Notification Act." 18 U.S.C. § 2250(a)(1). *Carr* recognizes that the obligation to register as a sex offender under SORNA must occur *prior to* (and presumably independent of) the interstate travel which may *then* subject the offender to federal prosecution under § 2250. *See* 130 S.Ct. at 2236 ("*Once a person becomes subject to SORNA's registration requirements,* which can occur only after the statute's effective date, that person can be convicted under § 2250 if he *thereafter* travels and

then fails to register." (emphasis added)). Doe's obligation to register is not dependent on his having engaged in post-enactment interstate travel, thereby subjecting him to federal criminal prosecution under 18 U.S.C. § 2250. *See, e.g., United States v. Musser*, No. 09–CR–224, 2009 WL 4668243, at *3 (E.D.Wis. Dec.2, 2009) ("unless that person travels in interstate commerce, there is no federal criminal consequence for a failure to register (although § 16913(e) does require each state to make failure to register a felony)").

■ Doe further contends that SORNA is unconstitutional under the *ex post facto* clause of the United States Constitution.[11] This is not a colorable claim. In *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), the United States Supreme Court held that Alaska's sex-offender registration statute did not violate the *ex post facto* clause as applied to individuals convicted of sex offenses prior to the statute's effective date. The Court held that "an imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.' " *Id.* at 93, 123 S.Ct. 1140 (citation omitted). The Court also held that the challenger in *Smith v. Doe* had failed to present "the clearest proof" necessary to find that Alaska's ostensibly civil statute was "so punitive either in purpose or effect as to negate [the State's] intention to deem it 'civil,' " *id.* at 92, 123 S.Ct. 1140 (citations and internal quotation marks omitted), even though Alaska's registration requirement was triggered by past criminal conduct, and the State required offenders to register and update

state court, *followed by a sentence of probation,* with being 'convicted.' " (emphasis added)).

**11.** The mandate that "[n]o ... ex post facto Law shall be passed," as applied to *federal*

legislation, appears in Article I, § 9 of the United States Constitution. The similar prohibition applied to the States appears in Article I, § 10.

their registration, published identifying information on registered offenders on the internet, and imposed criminal penalties for offenders' failure to comply with their registration obligations.

Relying on *Smith v. Doe,* numerous federal courts of appeals have held that SORNA's application to individuals who were convicted of sex offenses prior to the statute's enactment does not violate the *ex post facto* clause. *See, e.g., United States v. Young,* 585 F.3d 199, 204–06 (5th Cir. 2009); *id.* at 204 n. 26 (collecting cases from Fourth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits reaching same outcome); *United States v. May,* 535 F.3d 912, 919–20 (8th Cir.2008). Without repeating the analysis contained in these decisions, we concur in the result they reach, and reject Doe's *ex post facto* argument.

▇▇▇ Finally, in a supplemental authority letter filed after oral argument, Doe argues that modifications to the Attorney General's SORNA guidelines establish that he is not subject to the registration requirement. The Attorney General's explanation of the modified guidelines states that "it will be deemed sufficient for substantial implementation if jurisdictions register sex offenders with pre-SORNA or pre-SORNA-implementation sex offense convictions who remain in the system as prisoners, supervisees, or registrants, or who reenter the system through a subsequent criminal conviction." 76 Fed.Reg. 1630, 1639 (Jan. 11, 2011).

There are at least two problems with Doe's reliance on this aspect of the Attorney General's guidelines, however. *First,* the Attorney General's "substantial implementation" discussion is addressed to the adequacy of States' efforts to implement and enforce SORNA (which efforts constitute a condition of receipt of certain federal funds, *see* 42 U.S.C. § 16925), *not* to the obligation of offenders to register under the Act. As we have discussed above, SOR-NA's registration requirements apply without limitation to individuals who were "convicted of a sex offense," 42 U.S.C. § 16911(1); they are not dependent on those individuals remaining "in the [State criminal justice] system" at the time of SORNA's enactment. Indeed, the sentence of the Attorney General's statement immediately preceding the sentence on which Doe relies states categorically that "SORNA's requirements apply to all sex offenders, regardless of when they were convicted," 76 Fed.Reg. at 1639, recognizing the distinction between an offender's statutory obligation to register, on the one hand, and a State's efforts to ensure that offenders in fact comply, on the other. *Second,* Doe's petition only sought relief on the basis that he had not been "convicted" of a sex offense within the meaning of the statute. He did not allege that he should be exempted from SORNA's registration requirements because he had completed his involvement in Missouri's criminal justice system at the time the statute became effective. Doe is not entitled to relief on a ground he did not assert in the circuit court.

### Conclusion

The circuit court's judgment is reversed.

All concur.