John ROE I, Appellant,

v.

Colonel Ron REPLOGLE,
et al., Respondents.

No. SC 92978.

Supreme Court of Missouri,
En Banc.

Oct. 1, 2013.

Arthur A. Benson II, Jamie Kathryn Lansford, Arthur Benson & Associates, Kansas City, for Roe.

P. Benjamin Cox, Attorney General's Office, Abbe M. Feitelberg, Jackson County Counselor'S Office, Kansas City, for the State.

PATRICIA BRECKENRIDGE, Judge.

John Roe petitioned the Jackson County circuit court for declaratory and injunctive relief from a requirement that he register as a sex offender under the federal sex offender registration act ("SORNA"), 42 U.S.C. section 16901 to 16929. After discovery, the law enforcement officials against whom Mr. Roe filed suit moved for summary judgment. The circuit court granted the motion and entered judgment for the law enforcement officials. Mr. Roe appeals from the circuit court's entry of summary judgment, claiming the circuit court erred in granting summary judgment because (1) SORNA's delegation of authority to the federal Attorney General violates the nondelegation doctrine, (2) SORNA violates the prohibition against *ex post facto* laws, (3) SORNA does not require Missouri to register a sex offender who has completed his involvement in the criminal justice system, (4) SORNA contemplates yielding to state constitutional law, (5) there was no basis to prosecute

him for failure to register as he had not traveled in interstate commerce, and (6) SORNA violates his substantive due process rights. Because several of Mr. Roe's claims challenge the validity of a statute of the United States, this Court has jurisdiction. Mo. Const. art. V, sec. 3.

This Court finds that SORNA does not violate the nondelegation clause, the prohibition against *ex post facto* laws, or Mr. Roe's substantive due process rights. It further finds that SORNA requires Mr. Roe to register, notwithstanding the fact that he completed his involvement in the criminal justice system before it was enacted, and that SORNA's registration requirement does not violate the Missouri Constitution's ban on retrospective laws. Finally, the Court holds that the issue of whether there is a basis for prosecuting Mr. Roe is irrelevant in an action for a declaratory judgment in which he is requesting a ruling that he is not required to register. Accordingly, this Court affirms the circuit court's judgment.

### Factual and Procedural Background

In 1994, Mr. Roe was accused of inappropriately touching his stepdaughter, and he pleaded guilty to sodomy. He completed sexual abuse counseling and obeyed court orders regarding contact with his stepdaughter and supervised probation. After Missouri's Sex Offender Registration Act ("SORA"), section 589.400 *et seq.*,[1] became effective on January 1, 1995, Mr. Roe registered as a sex offender. He ceased to register in 2006 after this Court held that offenders who were convicted prior to SORA's effective date need not register. *Doe v. Phillips*, 194 S.W.3d 833, 852 (Mo.

banc 2006). Congress passed SORNA later in 2006, and in 2009, this Court ruled that SORNA created an obligation to register independent of SORA's application. *Doe v. Keathley*, 290 S.W.3d 719, 720 (Mo. banc 2009).

Before Mr. Roe registered under SORNA, a Cole County circuit court held that SORNA's registration requirement was triggered only by a conviction. *Doe v. Keathley*, Judg. No. 06–AC–CC01088. Because Mr. Roe's guilty plea did not result in a judgment of conviction under Missouri law,[2] he filed a petition in Jackson County circuit court against law enforcement officials for declaratory relief requesting that he not be required to register. *See Swallow v. State*, 398 S.W.3d 1, 5 n. 4 (Mo. banc 2013). However, while his petition was pending, the court of appeals reversed the Cole County circuit court and held that federal law, rather than state law, controls the question of whether a guilty plea constitutes a conviction under SORNA. *Doe v. Keathley*, 344 S.W.3d 759, 765 (Mo.App. 2011). Because Mr. Roe's guilty plea is considered a conviction under federal law, *see id.* at 765–66, he again was required to register. Mr. Roe amended his petition to challenge SORNA's constitutional validity as applied to him. The law enforcement officials moved for summary judgment, and the circuit court granted the motion.

Mr. Roe appeals. He claims that the circuit court erred in entering summary judgment because (1) Congress impermissibly delegated its authority to the federal Attorney General to implement SORNA, (2) applying SORNA to Mr. Roe violates the federal constitution's prohibition against *ex post facto* criminal laws, (3)

1. All statutory citations are to RSMo Supp. 2012, unless otherwise indicated.

2. Mr. Roe received a suspended imposition of sentence, which is not considered a "conviction" under Missouri law. *See Yale v. City of Independence*, 846 S.W.2d 193, 195 (Mo. banc 1993).

SORNA does not require states to register offenders who, like Mr. Roe, have completed their involvement with the criminal justice system, (4) SORNA contemplates yielding to state constitutions when it may violate a provision of a state constitution, (5) neither SORA nor SORNA provides a jurisdictional basis for prosecuting Mr. Roe for failing to register, and (6) registering would violate Mr. Roe's right to substantive due process.

### Standard of Review

■ This Court reviews the constitutional validity of a statute *de novo*. *Doe v. Toelke*, 389 S.W.3d 165, 166 (Mo. banc 2012). A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision, and this Court resolves all doubt in favor of the statute's validity. *Id.*

■ Likewise, this Court reviews summary judgment *de novo*. *Roberts v. BJC Health System*, 391 S.W.3d 433, 437 (Mo. banc 2013). The record is viewed in the light most favorable to the party against whom summary judgment was entered. *Id.* Summary judgment is appropriate only when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.*

### SORNA Does Not Violate Nondelegation Doctrine

■ Mr. Roe claims that SORNA unconstitutionally violates the separation of powers by impermissibly granting the federal Attorney General power to determine SORNA's retroactivity. The provision at issue provides:

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enact-

ment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. Section 16913(d).

■ The constitution grants Congress exclusive federal lawmaking authority. U.S. Const. art. I, sec. 8. "Congress manifestly is not permitted to abdicate or transfer to others the legislative functions with which it is vested." *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421, 55 S.Ct. 241, 79 L.Ed. 446 (1935). This "nondelegation doctrine" is "rooted in the principle of separation of powers that underlies our tripartite system of government." *Mistretta v. United States*, 488 U.S. 361, 371, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The doctrine has been recognized expressly as early as 1892, when the United States Supreme Court described the principle "[t]hat [C]ongress cannot delegate legislative power to the president" as "vital to the integrity and maintenance of the system of the government ordained by the constitution." *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692, 12 S.Ct. 495, 36 L.Ed. 294 (1892). The Supreme Court later clarified that, under the nondelegation doctrine, Congress may delegate legislative power so long as it provides an "intelligible principle to which the person or body authorized to [exercise that authority] is directed to conform." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928).

In 1935, the United States Supreme Court used the nondelegation doctrine to invalidate statutes in two cases because the delegation lacked an intelligible principle. *See Panama Refining Co.*, 293 U.S.

388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), and *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). In one case, the Supreme Court found that Congress failed to provide any guidance for the exercise of discretion, while in the other it found that Congress granted authority to regulate an entire economy based on the vague standard of "fair competition." *See Panama Refining Co.,* 293 U.S. at 430, 55 S.Ct. 241 ("Congress has declared no policy, has established no standard, has laid down no rule."); *A.L.A. Schechter Poultry Corp.,* 295 U.S. at 541–42, 55 S.Ct. 837 ("In view of the scope of that broad declaration and of the nature of the few restrictions that are imposed, the discretion . . . is virtually unfettered.").

■ After those decisions, the Supreme Court expounded on the "intelligible principle" test. A delegation meets the "intelligible principle" test if it clearly delineates the general policy, the public agency that is to apply it, and the boundaries of the delegated authority. *Am. Power & Light Co. v. Sec. & Exch. Comm'n,* 329 U.S. 90, 105, 67 S.Ct. 133, 91 L.Ed. 103 (1946). Using this test, the Supreme Court consistently has held that broad declarations of policy are sufficient to avoid nondelegation issues, acknowledging that "Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta,* 488 U.S. at 371, 109 S.Ct. 647; *see, e.g., Nat'l Broad. Co. v. United States,* 319 U.S. 190, 216, 63 S.Ct. 997, 87 L.Ed. 1344 (1943) (upholding a delegation to regulate radio communication for the "public interest, convenience, or necessity"); *Lichter v. United States,* 334 U.S. 742, 785–86, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948) (upholding delegation of authority to determine excessive profits). Since handing down *Panama Refining Co.* and *A.L.A. Schechter Poultry Corp.* in

1935, the Supreme Court has not struck down any other statute as violating the nondelegation clause.

Mr. Roe claims that Congress articulated no intelligible principle whatsoever when it delegated to the Attorney General the question of SORNA's applicability to offenders convicted before the act became effective. He points specifically to the lack of any limitations in section 16913(d). While the provision delegating the Attorney General authority does not itself contain limitations, several federal courts have found SORNA, when taken as a whole, satisfies the intelligible principle test.

In particular, the United States Courts of Appeals for the Second, Fourth and Sixth circuits have held that "SORNA includes specific provisions delineating what crimes require registration; where, when, and how an offender must register; what information is required of registrants; and the elements and penalties for the federal crime of failure to register." *United States v. Guzman,* 591 F.3d 83, 93 (2d Cir.2010) (internal citations omitted). Though SORNA gives the Attorney General authority to determine the act's application to pre-act offenders, it grants only the "highly circumscribed" authority to apply certain means to certain individuals as specified by the act. *Id. See also United States v. Felts,* 674 F.3d 599, 606 (6th Cir.2012) (SORNA contains particular delegations of authority that are well within the limits of nondelegation precedents); *United States v. Burns,* 418 Fed.Appx. 209, 211–12 (4th Cir.2011) (describing the Attorney General's authority as substantially bound by SORNA's requirements and elements in the failure-to-register statute).

Additionally, the First, Fifth, Eighth and Eleventh circuits of the Courts of Appeals have held that the act's general statement of purpose, "to 'establish[ ] a

comprehensive national system' of sex offender registration to 'protect the public from sex offenders and offenders against children,' " is sufficient to satisfy the nondelegation doctrine. *United States v. Whaley,* 577 F.3d 254, 264 (5th Cir.2009) (quoting 42 U.S.C. section 16901); *see also United States v. Kuehl,* 706 F.3d 917, 920 (8th Cir.2013); *United States v. Parks,* 698 F.3d 1, 7–8 (1st Cir.2012); *United States v. Ambert,* 561 F.3d 1202, 1213–14 (11th Cir. 2009) (SORNA's express statement of Congress' purpose is a sufficient intelligible principle). The Seventh Circuit also has found expressly SORNA does not violate the separation of powers principle but provided little insight into its reasoning. *United States v. Dixon,* 551 F.3d 578, 584 (7th Cir.2008) *abrogated on other grounds by Carr v. United States,* 560 U.S. 438, 130 S.Ct. 2229, 176 L.Ed.2d 1152 (2010), ("It is commonplace and constitutional for Congress to delegate to executive agencies the fleshing out of criminal statutes by means of regulations."). To date, no federal court has sustained a nondelegation challenge to SORNA's constitutional validity.

Mr. Roe argues that these decisions are not persuasive because they do not address specifically how the Attorney General should treat pre-act offenders. In *Reynolds v. United States,* however, the Supreme Court noted that SORNA provides that the "Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter." —— U.S. ——, ——, 132 S.Ct. 975, 981, 181 L.Ed.2d 935 (2012) (quoting 42 U.S.C. section 16913). According to the Supreme Court, that statement gives the Attorney General authority to specify the act's applicability to prior offenders, resolving the issue of whether SORNA, by its implementation and without any action by the Attorney General, applies to prior offenders. *Id.* at

981. In reaching its holding that SORNA does, in fact, delegate authority to the Attorney General, the Supreme Court acknowledged that Congress intended the delegation to resolve practical problems arising when the act attempted to integrate diverse state registration systems. *Id.* at 981. It also noted that the delegation could have been intended to provide a single, clear authority for pre-act offenders to consult when seeking to determine what the act required of them. *Id.* at 982. While the Supreme Court declined to address the nondelegation claim made in *Reynolds,* it concluded that "Congress [has] filled potential lacunae (created by related Act provisions) in a manner consistent with basic background principles of criminal law." *Id* at 982.

■ Guided by the Supreme Court's statements in *Reynolds,* this Court determines that the act includes an intelligible principle to guide the Attorney General's application of the act to pre-act offenders. SORNA states a general policy of creating a national registry to protect the public from sex offenders and offenders against children. *See Whaley,* 577 F.3d at 264; *see also Reynolds,* 132 S.Ct. at 981–2 (describing the various practical considerations that may have prompted Congress to seek the Attorney General's assistance). SORNA also specifies the public agency to which limited authority is delegated. 42 U.S.C. section 16913(d). Finally, it binds clearly the Attorney General's authority to apply the law by limiting the population of previous offenders subject to the registration requirement and the registration methods the Attorney General may use to accomplish the law's purpose. *See Reynolds,* 132 S.Ct. at 982; *Guzman,* 591 F.3d at 93. SORNA, therefore, satisfies the Supreme Court's intelligible principle test.

Mr. Roe argues that Justice Scalia's dissent in *Reynolds* shows that Justice Scalia would apply the nondelegation doctrine to find SORNA is unconstitutional. Justice Scalia wrote that SORNA "[sails] close to the wind with regard to the principle that legislative powers are nondelegable." *Id.* at 986 (Scalia, J., dissenting). However, Justice Scalia applied the doctrine of constitutional avoidance to find that Congress did not delegate its power impermissibly to the Attorney General. *Id.* Mr. Roe argues that the Supreme Court's majority opinion in *Reynolds* ruled that Congress did give such authority to the Attorney General; therefore, Justice Scalia must believe the act is unconstitutional. To interpret Justice Scalia's opinion in this way is to read into it language that is not present because Justice Scalia expressly declined to state that he would find SORNA unconstitutional. Moreover, even if Justice Scalia did believe SORNA was unconstitutional, his opinion in *Reynolds*, as a dissent, would not be binding on this Court. Mr. Roe's argument as to *Reynolds*, therefore, is unpersuasive.[3]

■ The nondelegation doctrine does not prohibit all delegations of Congress' authority but, instead, requires that Congress specify an intelligible principle to guide the party to whom authority is delegated. *Mistretta*, 488 U.S. at 372–73, 109 S.Ct. 647. The Supreme Court's jurisprudence demonstrates that this bar to congressional delegation is not a substantial one to meet. Moreover, while the nondelegation doctrine is still viable, the Supreme Court's "application of [it] principally has been limited to the interpretation of statutory texts, and more particularly, to giving narrow constructions to statutory delega-

tions that might otherwise be thought to be unconstitutional." *Id.* at 373, n. 7, 109 S.Ct. 647.

All of the federal courts that have considered the issue have found that Congress provided a sufficient intelligible principle in its delegation of authority to the Attorney General in SORNA. Considering the policy declaration and the limitations on SORNA's general applicability as well as the low threshold for a constitutional delegation, this Court finds that SORNA does not violate the nondelegation doctrine. Mr. Roe's nondelegation claim, therefore, fails.

### Registration Requirement Does Not Violate *Ex Post Facto* or Due Process

■ Mr. Roe raises two other constitutional claims: that SORNA violates the federal constitution's prohibition against *ex post facto* criminal laws and his Fifth and Fourteenth amendment rights to substantive due process. His claims fail under previous rulings of this Court and federal courts.

■ The federal constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, sec. 9. An allegedly *ex post facto* law that is intended as punishment may violate the ban and render the law void. *Smith v. Doe*, 538 U.S. 84, 93, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). However, if such a statute is intended "to enact a regulatory scheme that is civil and nonpunitive," that statute does not violate the ban and may stand. *Id.* The United States Supreme Court has held that a sex offender statute requiring pre-act offenders to register does not violate the ban on *ex post facto*

---

**3.** Since *Reynolds,* federal courts and a court of this state have continued to impose SORNA's registration requirements on pre-act offenders. *See United States v. Whitlow,* 714

F.3d 41, 48 (1st Cir.2013); *United States v. Stevenson,* 676 F.3d 557, 566 (6th Cir.2012); *Vaughan v. Dept. of Corrections,* 385 S.W.3d 465, 468 (Mo.App.2012).

laws because registration is civil and regulatory in nature. *Smith v. Doe*, 538 U.S. at 95–96, 123 S.Ct. 1140. Likewise, this Court already has determined that requiring pre-enactment offenders to register does not violate the Missouri Constitution's prohibition against *ex post facto* laws because the registration requirement is civil and not punitive.[4] *Doe v. Phillips*, 194 S.W.3d at 842; *R.W. v. Sanders*, 168 S.W.3d 65, 69–70 (Mo. banc 2005).

 This Court also has addressed Mr. Roe's substantive due process claim. Substantive due process rights may be violated if a law restricts liberty interests so fundamental that a state may not interfere with them unless the infringement is narrowly tailored to serve a compelling state interest. *Id.* at 842; *see also Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Judicial restraint requires courts "to exercise the utmost care whenever we are asked to break new ground in this field." *Phillips*, 194 S.W.3d at 842 (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Generally, protected substantive due process rights are those concerning marriage, family, procreation, and the right to bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). If a law does not impinge on a fundamental liberty, it will withstand substantive due process scrutiny so long as it is rationally related to a legitimate government interest. *Phillips*, 194 S.W.3d at 844–45.

In analyzing SORA, Missouri's analogous registration requirement, this Court found that the registration requirement did not violate substantive due process principles because it did not implicate a fundamental right and because it rationally was related to a legitimate state interest. *Id.* Similarly, SORNA's registration requirement does not implicate such fundamental rights as are protected by substantive due process. Further, it bears a rational relation to the legitimate government interest in protecting the public from sex offenders and, hence, does not violate due process. Mr. Roe's *ex post facto* and substantive due process claims, therefore, fail.

### SORNA Complies With Principles of Federalism

 Mr. Roe raises two other claims related to the interaction between SORNA and Missouri law. He claims that the circuit court erred in granting summary judgment because SORNA does not require states to register offenders who, like Mr. Roe, completed their involvement with the criminal justice system before SORNA was enacted. He also claims that SORNA contemplates yielding to the Missouri Constitution on the question of whether pre-act offenders must register because Missouri's constitution prohibits the passage of laws retrospective in their operation.

The Attorney General's modified guidelines for SORNA permit a state to re-

4. The United States Supreme Court, in *Smith v. Doe*, utilized a two-part test to determine whether a particular statute is civil or criminal in nature. 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). Under that test,

> We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was

to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Id.* This Court adopted and applied that test in *R.W.* to determine that the registration requirement of Missouri's sex offender registration statute was nonpunitive in nature. 168 S.W.3d at 68–70.

quire registration only of pre-act offenders who still are involved in the criminal justice system. 76 Fed. Reg. 1630, 1639 (Jan. 11, 2011). The guidelines state that "it will be deemed sufficient for substantial implementation if jurisdictions register sex offenders with [pre-act convictions] who remain in the system as prisoners, supervisees, or registrants, or who reenter the system through a subsequent criminal conviction." *Id.* Mr. Roe argues that, under these guidelines, he should be exempt from registering under SORNA because he completed his involvement in the criminal justice system before SORNA became effective.

Mr. Roe's argument fails to recognize, however, that the guidelines merely describe when a state is deemed to "substantially comply" with SORNA to be eligible for federal funding. They address the adequacy of a state's effort to implement and enforce SORNA, rather than the obligation of offenders to register. It is irrelevant whether SORNA mandates Missouri to register pre-act offenders because SORNA's registration requirement applies to all individuals convicted of a sex offense. Sections 16911(1), 16913. Accordingly, an offender who completed his involvement with the criminal justice system before the enactment of SORNA, such as Mr. Roe, still may be required to register. *Doe v. Keathley*, 344 S.W.3d at 770.

 Mr. Roe also asserts that section 16925(b) of SORNA contemplates circumstances when the act must yield to a state's constitution. Section 16925(b) provides:

(1) When evaluating whether a jurisdiction has substantially implemented this subchapter, the Attorney General shall consider whether the jurisdiction is unable to substantially implement this subchapter because of a demonstrated inability to implement certain provisions that would place the jurisdiction in violation of its constitution, as determined by a ruling of the jurisdiction's highest court.

. . .

(3) If the jurisdiction is unable to substantially implement this subchapter because of a limitation imposed by the jurisdiction's constitution, the Attorney General may determine that the jurisdiction is in compliance with this chapter if the jurisdiction has made, or is in the process of implementing reasonable alternative procedures or accommodations, which are consistent with the purpose of this chapter.

41 U.S.C. section 16925(b). According to Mr. Roe, SORNA's retroactive application must yield to the Missouri Constitution in so much as it violates the Missouri Constitution's ban on retrospective laws.

Like the Attorney General's guidelines, section 16925(b) addresses when a state is deemed to have "substantially implemented" SORNA. It permits a state to receive federal funding even if a constitutional limitation prevents it from fully implementing SORNA. *Id.* The statute does nothing to affect SORNA's registration requirement, namely, that all individuals convicted of a sex offense must register. Sections 16911(1), 16913.

 Furthermore, any claim that SORNA must yield to the Missouri Constitution's prohibition against retrospective laws fails because the registration requirement under SORNA does not violate the Missouri Constitution. The Missouri Constitution forbids the enactment of *ex post facto* laws or laws retrospective in their operation. Mo. Const. art. I, sec. 13. However, this prohibition only restricts the Missouri legislature from passing such laws and does not affect federal legislation. *See Keathley*, 290 S.W.3d at 720. Article

I, section 13 is not implicated when, as in this case, the state registration requirement is based on an independent federal registration requirement and not based solely on a past conviction. *Toelke*, 389 S.W.3d at 167. As such, section 16925(b) provides no relief to Mr. Roe because Missouri may require him to register under SORNA without violating its own constitution.

### Validity of Future Prosecution Not Addressed Here

Finally, Mr. Roe claims that the circuit court erred in granting summary judgment because neither SORA nor SORNA provides a basis for prosecuting him. This claim misunderstands the nature of the present case. Mr. Roe's petition is an action for declaratory judgment. In it, he requested a ruling that he not be required to register as a sex offender. The law's requirements for registration are clear, and under the Attorney General's properly promulgated rule, Mr. Roe is required to register. That requirement is independent from any questions of whether and by what authority he may be prosecuted for failing to register. Such questions are not before this Court. Mr. Roe's claim, therefore, fails.

### Conclusion

Contrary to Mr. Roe's claim, SORNA does not violate the nondelegation doctrine because Congress articulated an intelligible principle to guide the Attorney General's discretion in applying the act to pre-act offenders. It also does not violate Mr. Roe's right to substantive due process nor the prohibition in the United States Constitution against *ex post facto* criminal laws. Finally, SORNA does not need to yield to the Missouri Constitution because requiring pre-act offenders to register pursuant to a federal requirement is constitu-

tional. Accordingly, this Court affirms the circuit court's judgment.

All concur.