

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SD36741 |
| | ) | Filed: August 26, 2021 |
| ANTHONY JAMAL SHEPHERD, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Judge

**<u>AFFIRMED</u>**

Anthony Jamal Shepherd ("Shepherd") was convicted, following a jury trial, of one count of kidnapping in the second degree, and one count of unlawful use of a weapon. In one point on appeal, he contends that "the trial court erred in ordering [him] to register as a sex offender[.]" This point has merit and is granted. The trial court erred during sentencing by orally ordering Shepherd to register as a sex offender. Because that order was not incorporated into the written judgment, however, the judgment itself is correct and is affirmed.

## Facts and Procedural Background

On December 7, 2017, Shepherd and Victim were involved in a physical altercation in an extended-stay motel room in Springfield. The police were called, and Shepherd was arrested.

On December 8, 2017, Shepherd was interviewed by detectives with the Springfield Police Department, after being *Mirandized*.[1] Shepherd indicated that Victim came to his room to smoke marijuana. Victim came in, she took her shoes and jacket off, they both sat on his bed, and they began smoking marijuana, drinking alcohol, and "watching a game." Shepherd stated they moved up to lean against the headboard and a little while after that, Victim lay face down to watch television. At that time, he began rubbing Victim's buttocks and genitals "at the same time for a while," and Victim objected saying, "No, I don't want to do this." Shepherd claimed that he immediately stood up and stopped touching Victim, but also decided that if Victim was "not gonna give me what I want[ed], I'm definitely not gonna give [her] what [she] want[ed]."[2]

Shepherd said Victim then tried "to grab my weed and the liquor" from a bedside dresser.[3] Shepherd claimed that at that moment, Victim "got to screaming, she got to saying 'ow,' and yelling 'get off me' … and I'm like, 'I'm not touch … I'm not hurting you[.]'" Shepherd said he stopped Victim from taking his weed by "grabb[ing] it out of her hand." Shepherd stated, "I was never yelling. I was not the one yelling. The only time I yelled I was like 'why are you yelling, why are you doing this.' That's the only time I said anything to her." When a detective suggested to Shepherd, "You were maybe yelling 'shut the fuck up[,]'" Shepherd replied, "Yeah, I might

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

[2] Elsewhere in the interview, Shepherd told police that he did not give marijuana away for free.

[3] Shepherd stated that Victim "never got off the bed" during their altercation.

have said that. She's talking about 'ow, why are you hurting me?' C'mon now, I already knew where that was going."

Shepherd stated that he immediately unlocked and opened his door to the hallway, threw Victim's lighter into the hallway, and "was going to throw the beer cans out there, but I was like 'I might as well keep these.'" He then walked back into his room, at which time Victim got up from the bed, and Shepherd walked Victim into the hallway. Shepherd claimed the only time he got physical with Victim was when he "grabbed" the marijuana out of her hand, and when he gave her a "little nudge" out the door.

When asked about the handgun found in his room, Shepherd admitted to having a handgun, but stated he had the handgun for protection because in Tennessee, where he was from, that is what you did. Shepherd stated that when Victim came into his room, he placed the handgun between the bed railing and mattress, and it remained there the entire time Victim was in his room.[4]

Shepherd was charged, by second amended information, with attempted rape in the first degree (Count I), pursuant to section 566.030; the class D felony of kidnapping in the second degree (Count II), pursuant to section 565.120; the class D felony of assault in the second degree (Count III), pursuant to section 565.052; the class E felony of unlawful use of a weapon (Count IV), pursuant to section 571.030; and the class D felony of stealing a firearm (Count V),[5] pursuant to section 570.030.1(3).[6]

---

[4] Shepherd stated that Victim never "play[ed] with" or "handle[d]" the gun, because he "wouldn't let that happen." However, when asked whether there was any reason why Victim's DNA would be on his gun, Shepherd told police that "[Victim] was all over the bed. The gun was in the bed." He eventually indicated that there was no reason why Victim's DNA should be on the gun, and that he would be unable to account for any DNA tests that showed otherwise.

[5] Count V (stealing a firearm) was later dismissed by the State.

[6] All references to statutes are to RSMo Noncum. Supp. 2014, effective January 1, 2017, unless otherwise indicated.

3

A jury trial commenced on December 3, 2019. Victim testified that she was living with her boyfriend in an extended-stay motel, and that Shepherd lived across and down the hall. Victim indicated that she asked a woman she knew in passing where she could obtain marijuana, and that the woman told Victim to go to Shepherd's room. Victim testified that when she went to Shepherd's room, the two talked and smoked marijuana on Shepherd's bed. Victim indicated that Shepherd asked her to stay the night with him, at which time she became uncomfortable and got up from the bed. She testified that Shepherd grabbed her and threw her back on the bed, and rubbed her buttocks and genitals over her clothes. Victim indicated that she protested, and that Shepherd told her to "shut the fuck up." Shepherd then pulled down the back of her pants, at which time she begged Shepherd to stop and started screaming.

Victim testified that Shepherd then grabbed a gun from under a pillow and hit her in the head and neck with it several times while she was still face down on the bed. Victim stated that she was able to get up and walk toward the door, but Shepherd grabbed her, pushed her down, put the gun barrel in her mouth, and again told her to "shut the fuck up." Victim said that she begged him to stop, and "screamed really loud[,]" at which time Shepherd got off of her, "ran [her] to the door and at gunpoint and told [her] to get the fuck out and, if [she] ever told anybody, he'd kill [her]."

Corporal Nathan Worland ("Corporal Worland"), of the Springfield Police Department, testified that in a search of Shepherd's room, marijuana was observed in several areas of the room, and a 9 millimeter black semi-automatic handgun was found in a trash can. A chambered round and a loaded magazine were removed from the gun. The gun was cocked and ready to fire. Officer Worland also took pictures (admitted as exhibits during the State's case in chief) of the two red lines on the left side of Victim's neck measuring 3-4 centimeters, and bruising on her right arm.

4

Courtney Workman ("Workman"), a DNA criminalist with the Missouri State Highway Patrol Crime Lab, testified she tested swabs from the muzzle of the 9 millimeter handgun, and that the DNA from the muzzle matched Victim's DNA. Her lab report to this effect was admitted as State's Exhibit 43.

Shepherd testified in his own defense. He testified he met Victim shortly after he moved into the motel on December 1, 2017, that the two had subsequently met up and smoked marijuana together on several occasions, and that Victim had been inside his room multiple times before the charged incident. He stated that Victim came to his room on December 7 because she had gotten into an argument with her boyfriend earlier in the day and needed something to relax. He had already been drinking and smoking marijuana before Victim arrived. Shepherd admitted to rubbing Victim's buttocks and genitals on top of her clothes, but only after she lay down on her abdomen in close proximity to him to watch television. He claimed that Victim stated she did not "want to do this anymore" and asked him to stop, at which time he went to the bathroom. When he returned, he found Victim trying to steal his "drugs and alcohol" by "stuffing [them] into her pockets[,]" and that he "snatched" the drugs out of her hand.

Shepherd testified that at this time, Victim started yelling "ow" and "Get off me[,]" and that Victim's cries carried over the sound of his television. Shepherd indicated that he then began "thinking she got to get out of here[,]" and told Victim to leave his room. He grabbed her arm and physically walked her to the door, then "undid the top lock, . . . undid the deadbolt, [and] I pushed -- I nudged her out."

Shepherd admitted to having a gun in his room, and that he threw it in the trash can after his altercation with Victim. He testified that he kept the gun for protection because he sold drugs, but claimed that he never struck Victim with the gun and did not know how her DNA came to be

5

on the muzzle. Shepherd admitted that he wanted to have sex with Victim "once everything started in motion," but claimed that he stopped trying to have sex with Victim after she told him "No."

The jury convicted Shepherd of kidnapping in the second degree (Count II), and unlawful use of a weapon (Count IV). The jury found Shepherd not guilty of attempted rape in the first degree (Count I), and not guilty of assault in the second degree (Count III).

Shepherd waived jury sentencing, and did not file a motion for new trial. At the sentencing hearing, the following colloquy occurred concerning whether the trial court should order Shepherd to register as a sex offender:

> [PROSECUTOR]: The defendant would also need to register as a sex offender under 589.414, Subsection 5(d). That would be a Tier 1 sex offender registration for kidnapping in the second degree as the primary motivation was a sexual offense.
>
> As a Tier 1 sex offender, the defendant would need to register annually on his birthday and then would be under the sex offender registration requirements for 15 years. If he complied with all sex offender registration requirements, after a period of ten years, he could apply for a reduction of time of five years.
>
> . . . .
>
> THE COURT: Mr. Shepherd, do you have anything you want to say to the Court?
>
> THE DEFENDANT: Yes, sir. I just -- Your Honor, this whole time I've pleaded my innocence and everything, and I just -- the prosecutor did their job or whatever, and I was found not guilty of the first two -- the other two charges, and I don't understand why they keep being brought up, why I'm trying to be labeled as a sex offender and all that.
>
> Like I said, I was found not guilty by a jury court, so I feel like that should not be brought up or be involved in my sentencing at all.
>
> THE COURT: Well, [prosecutor], he does raise a point that I was going to raise with you. The jury did find him not guilty of rape or attempted rape.
>
> THE DEFENDANT: And also assault.

6

THE COURT: Do you have any response?

[PROSECUTOR]: Oh, yes. Under 589.414, Subsection 5, it describes what a Tier 1 sex offender is; and kidnapping in the second degree under 565.120 is a sexual motivation, which is what this case was. [This statute requires registration for] kidnapping in the second degree with a sexual motivation, which is what the jurors found him guilty for in this case because of the sexual motivation.

And Count 2, for which he was found guilty reads -- well, the charging language provided and the jurors found beyond a reasonable doubt that he had substantially interfered with her liberty and exposed her to a serious -- a substantial risk of serious physical injury, being rape. That was the finding of the jurors.

So our position is that certainly it's registrable [as] kidnapping second because it was a sexual motivation.

The state acknowledges that he was found not guilty beyond a reasonable doubt on Count 1, but Count 2 is registrable as a sex offense.

[DEFENSE COUNSEL]: We disagree, Your Honor.

THE COURT: Okay.

[DEFENSE COUNSEL]: Yes, Judge. I point out that the jury acquitted him of a claimed assault attempt. So to say that the jury made some kind of finding that it was kidnapping based on a sexual motivation, I think, is speculative. I mean, they did find him guilty, but the rest of it, I don't know how one can say that.

[PROSECUTOR]: And if I can respond to that argument.

So during jury instructions and our first closing argument we created a PowerPoint that described, in order to find guilty for kidnapping in the second degree, you have to find that the defendant subjected the victim to serious physical injury. Under -- and they found him not guilty of the striking with a firearm to the neck. That would be assault. That wasn't charged as serious physical injury.

What we argued to the jurors and what they found guilty on kidnapping was that the risk of serious physical injury was that he attempted to rape her. They found that his intent in holding her in the room, the kidnapping in the second degree, his intent in doing that was sexually motivated. That's what the serious physical injury in the definition that we presented to the jurors -- they had to find.

THE COURT: Let's go off the record.

(Off-the-record discussion.)

7

THE COURT: Okay. Back on the record.

The Count 2 instruction reads that: First, that on or about December 7th, 2017, that the defendant restrained [Victim] unlawfully so as to interfere substantially with [Victim]'s liberty; and, second, that such restraint was without the consent of [Victim] and as a result of forceable compulsion; and, third, that such restraint exposed [Victim] to a substantial risk of serious physical injury; and, fourth, that engaging … in the conduct amended in this instruction, the defendant acted knowingly, then you will find the defendant guilty in Count 2 of kidnapping in the second degree.

That's why it doesn't mention anything about -- well, yes, I thought the -- but the jury decided they didn't believe the rape count, so they found him not guilty.

Count 2 doesn't say anything that the kidnapping -- one of the elements is about the sexual offense.

[PROSECUTOR]: May I reply?

So the additional definitional instruction as used in Count 2, the term, quote, serious physical injury means physical injury that creates a substantial risk of death or causes serious disfigurement or protracted loss or impairment of any function of the body.

So that substantial risk of the serious physical injury, under all of the facts presented and as we described to the jurors, the only possible serious physical injury would be motivated by the sexual offense when he's putting the gun in her mouth.

Because they found her not guilty -- found the defendant not guilty of assault, then that leaves -- and what we described to the jurors is -- we're not telling you that the assault in the second degree where he struck her in Count 4 -- that wasn't the -- that's not what the charged instruction for serious physical injury on Count 2 was.

Count 2, the serious -- the substantial risk of serious physical injury is rape, and they found him guilty of kidnapping in the second degree, the motivation being the risk of serious physical injury, which had to have been rape. So that's why it's sexually motivated.

At the conclusion of both parties' arguments, the trial court sentenced Shepherd to concurrent sentences of seven years' imprisonment for kidnapping in the second degree and four years for unlawful use of a weapon, to run concurrent with any prior and existing sentences. The

8

trial court also ordered that Shepherd register as a sex offender.  The written judgment, however, makes no reference to the registration order.  This appeal followed.

In one point on appeal, Shepherd asserts that:

> **The trial court erred in ordering Mr. Shepherd to register as a sex offender under sections 589.400 to 589.425, in violation of his right to due process as guaranteed by the Fifth, Sixth,[7] and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, because he was not found guilty of a registrable offense, i.e. of kidnapping in the second degree *with a sexual motivation*. Although Mr. Shepherd was found guilty of kidnapping in the second degree and [Victim] testified that he touched her vagina and buttocks and attempted to pull her pants without her consent after she told him she did not want to spend the night with him, the jury could believe all, some or none of her testimony and was not required to believe the state's theory of the case; therefore, because the jury found Mr. Shepherd not guilty of attempted rape in the first degree and made no finding that Mr. Shepherd committed any offense with a sexual motivation and because Mr. Shepherd does not have an obligation to register as a sex offender under federal law, he has no statutory obligation to register as a sex offender in Missouri.**

(Emphasis in original.)

## Standard of Review

The issue presented by this appeal is whether Shepherd's conviction for kidnapping in the second degree requires him to register as a sex offender.  Both parties' arguments focus on section 589.414.5(1)(d).[8]  The proper interpretation and application of that subsection of the statute is an issue of law, which an appellate court reviews *de novo*.  ***Kersting v. Replogle***, 492 S.W.3d 600, 602 (Mo. App. 2016).

---

[7] *Cf*. ***Doe v. Belmar***, 564 S.W.3d 415, 420 (Mo.App. E.D. 2018) (rejecting appellant's Fifth and Sixth Amendment claims in light of our Supreme Court's determination "that the sex offender registration requirement is 'civil and not punitive.'") (citing ***Roe v. Replogle***, 408 S.W.3d 759, 766-67 (Mo. banc 2013); ***Doe v. Phillips***, 194 S.W.3d 833, 842 (Mo. banc 2006); ***R.W. v. Sanders***, 168 S.W.3d 65, 69-70 (Mo. banc 2005)).

[8] All references to Chapter 589 are to RSMo Cum. Supp. 2018.

## Analysis

Shepherd argues that "[t]he trial court erred in ordering [him] to register as a sex offender under sections 589.400 to 589.425," in that "he was not found guilty of a registrable offense, i.e. of kidnapping in the second degree *with a sexual motivation*." (Emphasis in original.) We agree.

The Missouri Sex Offender Registration Act (SORA) is contained in sections 589.400-.426. ***Rideout v. Koster***, 439 S.W.3d 772, 774 (Mo. App. 2014). In relevant part, section 589.400 states:

> 1. Sections 589.400 to 589.425 shall apply to:
>
> (1) Any person who, since July 1, 1979, has been or is hereafter *adjudicated for an offense referenced in section 589.414* . . . .

(Italics added) § 589.400.1(1). The word "adjudicated" has a statutory definition:

> As used in sections 589.400 to 589.425, the following terms mean:
>
> (1) **"Adjudicated"** or **"adjudication"**, adjudication of delinquency, a finding of guilt, plea of guilt, finding of not guilty due to mental disease or defect, or plea of nolo contendere to committing, attempting to commit, or conspiring to commit[.]

(Bold emphasis in original) § 589.404(1). The offense at issue here is referenced in section 589.414.5. In relevant part, this subsection of the statute states:

> 5. Tier I sexual offenders, in addition to the requirements of subsections 1 to 4 of this section, shall report in person to the chief law enforcement official annually in the month of their birth to verify the information contained in their statement made pursuant to section 589.407. Tier I sexual offenders include:
>
> (1) Any offender *who has been adjudicated for the offense of*:
>
>     . . . .
>
> *(d) Kidnapping in the second degree under section 565.120 with sexual motivation*[.]

(Italics added) § 589.414.5(1)(d).

The State argues that the trial court could independently decide whether the "sexual motivation" requirement was met. We disagree. This case was tried to a jury, which determined Shepherd's guilt or innocence on each charged offense. As relevant here, the statutory definition of "adjudicated" requires a finding of guilt by the jury. § 589.404(1). Accordingly, section 589.414.5(1)(d) cannot be applied to Shepherd's kidnapping conviction unless the record demonstrates that *the jurors* found this offense was committed "with sexual motivation[.]" No such support exists in the record before us.

Shepherd was charged with a violation of section 565.120, which states, in relevant part, that "[a] person commits the offense of kidnapping in the second degree if he or she knowingly restrains another unlawfully and without consent so as to interfere substantially with his or her liberty and exposes him or her to a substantial risk of serious physical injury." § 565.120.1. Sexual motivation is not an element of that offense.

With respect to this charge, the second amended information alleged that Shepherd committed this offense because "on or about December 7, 2017, in the County of Greene, State of Missouri, the defendant knowingly restrained [Victim] unlawfully and without consent so as to interfere substantially with [Victim]'s liberty and exposed [Victim] to a substantial risk of serious physical injury." No allegation of sexual motivation was made.

This offense was submitted to the jury in Instruction No. 7. In relevant part, this instruction stated:

> First, that on or about December 7, 2017, in the State of Missouri, the defendant restrained [Victim] unlawfully so as to interfere substantially with [Victim]'s liberty, and
>
> Second, that such restraint was without the consent of [Victim] and as the result of forcible compulsion, and

11

Third, that such restraint exposed [Victim] to a substantial risk of serious physical injury, and

Fourth, that in engaging in the conduct submitted in this instruction, the defendant acted knowingly,

then you will find the defendant guilty under Count 2 of kidnapping in the second degree.

This instruction contains no reference to any sexual motivation.

During closing argument, the prosecutor presented the following argument concerning the

kidnapping charge:

[W]e've charged the defendant with restraining [Victim] unlawfully so as to interfere substantially with her liberty. She tried to leave the room twice. The defendant did not let her. She pleaded with him to let her out. He refused. Notice that in this instruction there's not a time limit. It's whether the defendant restrained her unlawfully and it interfered substantially with her ability to get free and her liberty. And so that's it. That's all it takes. [Victim] described that. She tried to get out. The defendant wouldn't let her. Tried again. Defendant wouldn't let her. That is interfering with her liberty. Now, the assault that she described is the defendant choking her, hitting her on the head, threatening her with the gun, striking her with the gun, placing the gun in the mouth. All of those things were used to restrain her liberty. … Second, that the restraint was without her consent and the use of forceable compulsion. We have the definition of forceable compulsion: physical force that overcomes reasonable resistance. We've talked about that in the first degree -- the attempted rape in the first degree count when [Victim] was trying to get out. The defendant wouldn't let her. She was attempting. He was using force that she could not overcome with reasonable resistance. Also using the firearm. That's the second count again. *Third, that the restraint exposed her to a substantial risk of serious physical injury. Go back one. That serious physical injury at the top means physical injury that creates a substantial risk of death or serious disfigurement or protracted loss. When he placed the gun in her mouth, she felt like she was going to die. That counts as serious physical injury. And when a loaded gun is placed in your mouth, when you are struck with a gun on the neck, all of those things are accomplishing the placing at risk of serious physical injury.*

(Italics added.) Once again, there was no reference by the prosecutor to any sexual motivation

when she described why the evidence supported a conviction on the kidnapping charge. During

the sentencing hearing, the prosecutor inaccurately described what had been argued as evidentiary support for the serious physical injury element of the kidnapping charge.[9]

Finally, we observe that Shepherd was charged with attempted rape. The State presented evidence concerning his sexual motivation for attempting to commit that offense. Since the jury acquitted Shepherd on that charge, the jury must have disbelieved the State's evidence on that issue. For all of the foregoing reasons, the trial court erred during the sentencing hearing when it ordered Shepherd to register as a sex offender. Because that order was not incorporated into the written judgment, however, the judgment itself is correct and is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - CONCUR

JACK A.L. GOODMAN, J. – CONCUR

---

[9] In our factual summary, we quoted what the prosecutor said on this topic during the sentencing hearing:

> What we argued to the jurors and what they found guilty on kidnapping was that the risk of serious physical injury was that he attempted to rape her. They found that his intent in holding her in the room, the kidnapping in the second degree, his intent in doing that was sexually motivated. That's what the serious physical injury in the definition that we presented to the jurors -- they had to find.